McCANN *v.* THE UNITED STATES OF AMERICA.

INDICTMENT : EMBEZZLEMENT.—An indictment must set forth facts sufficient to constitute the given offense, so as to notify the accused of the issue he has to meet ; and unless it does this, it charges nothing on which an issue can be raised by plea of not guilty ; this rule is founded on a principle that inheres in all criminal cases. Hence an indictment for embezzlement must set forth the actual fiduciary relation and its breach.

IDEM.—A statute, in creating a crime, defines it; and may employ for the purpose a proposition of fact, or one of law only ; all the ingredients of fact that are elemental to the definition, must be alleged in the indictment, so as to bring the defendant precisely and clearly within the statute; if that can be done by simply following the words of the act, that will do; if not, other allegations must be used; hence the rule to follow the words, is safe only when its effect will be to follow the act.

IDEM.—A count in an indictment, which alleges that by one and the same act the defendant embezzled and stole the property; by one act com-

mitted upon it two dissimilar crimes, the commission of one of which negates the possibility of the commission of the other, nullifies itself and charges nothing; tenders no issue, and will not support a verdict of guilty.

EVIDENCE : INSTRUCTIONS.—Where the defendant was being tried for embezzlement, and while testifying as a witness in his own behalf, was asked, if he had made any arrangement with the agent of the government in respect to the sugar in question, and having answered in the affirmative, he was then asked the following question : "You may now state what that arrangement was" ; objection being made, the court refused to let the witness answer. At the conclusion of the testimony the defendant requested the court to give the following instructions to the jury : "*Ninth*—That if the defendant took the property described in the indictment, under an honest claim of right to do so, and under an honest belief that he had authority to take the same and dispose of it, then the act of taking would lack the felonious intent necessary to constitute the crime charged, and it is for the jury to say, in view of all the facts and circumstances in evidence, what the intention of the defendant was." "*Tenth*—That if the defendant took the property described in the indictment, and converted the same to his own use under an agreement with the officers of the United States that he should do so, and return the like amount of property to the United States ; or if he took such property with an honest belief on his part that he had such agreement and authority, then he cannot be found guilty as charged in the indictment." Both of which instructions were refused. *Held,* That the district court erred in rejecting the answer of the defendant in reference to the arrangement made with the agent of the government, and also in refusing instructions nine and ten, requested by the defendant, for the reason that if he converted the property, under an agreement with the agent of the government to do so, and with an honest belief on his part that he had authority, whether he had or not as a matter of fact, he could not be guilty of embezzlement. And whether or not these facts existed was a question for the jury.

ERROR to the District Court of Laramie County.

The plaintiff in error was indicted in the district court on the 16th day of November A. D. 1877; the indictment contained two counts and was in the following language :

"UNITED STATES OF AMERICA,
  TERRITORY OF WYOMING,        } *ss.*
  1ST JUDICIAL DISTRICT,

At a term of the district court for the first judicial district of the territory of Wyoming, exercising the jurisdic-

tion of the circuit and district courts of the United States, begun and held at Cheyenne, in the first judicial district of the territory of Wyoming aforesaid, upon the fifth day of November, in the year of our Lord one thousand eight hundred and seventy-seven, the grand jurors of the United States of America, good and lawful men, summoned from the body of said district, and duly impannelled, sworn and charged to inquire in and for the body of said district of all offenses against the laws of the United States, committed within said district, in and by the authority of the United States of America, upon their respective oaths do present and find, that, on the tenth day of November, in the year of our Lord one thousand eight hundred and seventy-six, Dwight J. McCann, yeoman, late of the district aforesaid, at and within the district aforesaid, twenty thousand pounds of sugar of the value of ten cents per pound, of the goods, chattels and property of the United States of America, then and there being found, then and there feloniously and fraudulently did embezzle, steal and purloin, contrary to the form of the act of congress in such case made and provided, and against the peace and dignity of the United States of America.

And the jurors aforesaid, upon their respective oaths aforesaid, do further present and find that said Dwight J. McCann, on the day and year aforesaid, at the place aforesaid, twenty thousand pounds of sugar of the value of ten cents per pound of the goods and chattels and property of the United States of America, then and there being found, then and there feloniously did take, steal and carry away, contrary to the form of the act of congress in such case made and provided, and against the peace and dignity of the United States of America."

The defendant filed a demurrer expressing three causes or grounds therefor, to-wit:

1. That the indictment and the matters therein contained, in manner and form as the same were stated, were not sufficient in law, etc.

2. That the first count of said indictment and the matters therein contained, in manner and form as the same were therein stated, were not sufficient in law, etc.

3. That the said second count of said indictment was no part thereof and that said second count, and the matters therein contained, in manner and form as the same were therein stated, were not sufficient in law, etc.

The act of congress under which this indictment was drawn is as follows:

" That any person who shall embezzle, steal or purloin any money, goods, chattels, records, or property of the United States shall be deemed guilty of felony, and on conviction thereof before the district or circuit court of the United States, in the district wherein said offense may have been committed, or into which he shall carry, or have in possession of said property so embezzled, stolen or purloined, shall be punished therefor by imprisonment, at hard labor, in the penitentiary, not exceeding five years, or by a fine not exceeding five thousand dollars, or both, at the discretion of the court before which he shall be convicted." Statutes of the United States, 1874, '75; chap. 144, page 479, sec 1.

The demurrer was overruled; the defendant then pleaded not guilty to the indictment, and the case was tried at the November term 1878, resulting in a verdict of guilty.

*W. W. Corlett*, for plaintiff in error.

The defendant must have committed the acts named in the statute and he must have been convicted thereof in the district or circuit court of the United States in the district wherein the offence was committed, before any court has any authority to inflict punishment. The conviction of the defendant before a district or circuit court of the United States is just as much a condition precedent to the right to impose a penalty as is the commis-

sion of an embezzlement or larceny. That fact does not make it such a court. The supreme court of the United States has in several cases decided that a territorial court is not either a district or circuit court of the United States. *Clinton* v. *Englebrecht*, 13 Wallace, 434; *American Insurance Co.* v. *Cauter*, 1 Peters, 545; *Bennor* v. *Porter*, 9 Howard, 235; *Reynolds* v. *The United States*, 8 Otto, 145.

A fundamental rule in the construction of criminal statutes is, that they are to be strictly construed in favor of the defendant. 1 Bishop Crim. Law, secs. 114, 115, 133. This rule is further enforced and illustrated by that subordinate rule of interpretation of a criminal statute, which is expressed in these words and which is enforced by all courts and asserted by all standard text books upon this branch of the law, viz.: " No case is to be brought by construction within the statute while it falls not within all its words." 1 Bishop on Criminal Law, sec. 134, 5, 139; *Hall* v. *The State*, 20 Ohio, 7; *United States* v. *An Open Boat*, 5 Mason, 120; *Rex* v. *Ellis*, 5 B. & C., 395; *United States* v. *Nott*, 1 McLean, 499; *Commonwealth* v. *Gee*, 6 Cush., 174; *United States* v. *Hiler*, 1 Morris, 330.

Embezzlement is the misappropriation of money or other things by servants in whom a trust is reposed, where by reason of the trust or other circumstances the act does not amount to larceny. 1 Bishop on Criminal Law, sec. 419. 2 Bishop on Criminal Law, secs. 280–281.

No indictment for embezzlement is good which does not set out the trust relation, which is an indispensable ingredient of the offense, and a breach of the trust. Wharton's Precedents of Indictment and Pleas, pp. 205 to 211; Wharton's Precedents, etc., ed. 1871, pp. 460–469; Bishop on Statutory Crimes, sec. 418; Bishop on Statutory Crimes, sec. 381; *Commonwealth* v. *Smart*, 6 Gray, 16; Wharton's Criminal Law, sec. 372. The defendant in this case was neither a servant nor a public officer; he was merely a contractor with the government, and hence there was no embezzlement——none was charged in the indictment or

proved on the trial. Wharton's Criminal Law, secs. 1935, 1936, 1937, 1940.

Evidence of embezzlement was not admissible under the first count in the indictment. 2 Bishop on Criminal Procedure, secs. 282, 3, 4; *Commonwealth* v. *Simpson*, 9 Metcalf, 138–142. Neither is the first count in the indictment sufficient to charge a larceny. It does not contain the words, " did take, steal and carry away," always necessary in a charge of larceny, Wharton's Precedents, pp. 190, 191, note (d); Wharton's Precedents, 2 vol. ed. 1871, p. 417, note (d).

As to what constitutes the crime of embezzlement and is necessary in proof to sustain an indictment, see *Regina* v. *Creed*, 47 Eng. C. L. 63; *Rex* v. *Jones*, 32 Eng. C. L. 897; *Regina* v. *Norman*, 41 Eng. C. L. 274. The description of the property alleged to have been embezzled and stolen was bad. (This objection applies to both counts of the indictment.) Wharton's Criminal Law, sec. 354 to 362. So, too, the allegation of the value of the property is insufficient in both counts of the indictment. Wharton's Criminal Law, secs. 354–362. Horton's Criminal Law, secs. 354—362.

The defendant offered to prove an arrangement with the Commissioner of Indian Affairs by which the defendant might dispose of the sugar and supply an equal amount the following spring. Was this evidence competent in any view of the case? We claim that it was, and that the court committed a grievous error in ruling it out. The evidence was ruled out on the ground that its effect would be to vary a written contract by parol evidence. But if this had been a mere civil action, it being a new and distinct agreement upon a new consideration, being in addition to and beyond the original written contract, and because as to these particular goods it would show that the written agreement was waived or abandoned, the evidence ought to have been received. Greenleaf on Evidence, secs. 303, 304; 2 Parsons on Contracts, 554–55; *Monroe* v. *Perkins*, 9 Pickering, 298.

If the defendant, instead of denying the appropriation of property, admits the appropriation, alleging a right in himself, no matter how unfounded, or setting up an excuse, no matter how frivolous, his offense in taking and keeping it is no embezzlement.    Wharton's Criminal Law, sec. 1940; 2 Bishop on Criminal Procedure, sec. 298; 1 Bishop on Criminal Law, sec. 240; *Regina* v. *Norman*, 41 E. C. Law, 274; *R.* v. *Reed*, 1 Carrington & M., 306; 2 Russell on Crimes, 9; *State* v. *Bennett*, 17 Missouri, 379; *State* v. *Witt*, 9 Missouri, 673; *State* v. *Conway*, 18 Missouri, 321; Roscoe's Criminal Ev., 592; 2 Archbold P. & P., 387; 2 East P. C., 554, 662, 659, 694; Greenleaf on Evidence, sec. 51; *Wilson* v. *Barkalow*, 11 Ohio, 470.

The court, at the request of the prosecution, charged the jury as follows:

"If a bailee who has charge of the goods or property of another, with intent to steal, breaks bulk and removes the property from the original package, the act of breaking bulk for a purpose inconsistent with the object of the bailment, and for the further purpose of feloniously converting the same to his own use, constitutes in itself the crime of larceny."

The instruction complained of was erroneous, because any breaking of bulk by the defendant occurred *after* the defendant had made a conversion of the property—the whole of it—by assuming entire and exclusive dominion over it, as his own.   If a bailee, before the termination of the bailment, converts to his own use the whole of a quantity of goods entrusted to him, as bailee, he is not guilty of larceny.   If, after such conversion of an entire lot of goods, he breaks bulk, or does anything else with the goods, such breaking of bulk, or other act in respect to the property, does not constitute larceny.   In this, we think all the authorities are agreed.   Wharton's Criminal Law, secs. 1861, 1862, 1863, 1864, 1866; *Rex* v. *Leigh*, 2 East P. C., 694; Wharton's Criminal Law, 1770; 2 Bishop Criminal Procedure, 298; *Regina* v. *Norman*, 41 E. C. Law, 274;

2 Russell on Crimes, 9; *Washington Ins. Co.* v. *Merchant's Ins. Co.*, 5 O. S., sec. 450.

If an erroneous instruction is given to the jury, the case must be reversed on error, unless the court can clearly see that it could not possibly have done any harm. The presumption is, that improper instructions as to the law work mischief. In this case it would be impossible for the court to see that no harm was done, because it cannot know how the minds of the jurors were affected by the instruction upon the vital question in the case, namely, did the defendant take the goods with a felonious purpose and mind? *Lowe* v. *Lehman*, 15 Ohio State, 179; *Pendleton Street R. R.* v. *Stallman*, 22 Ohio S., 1; also see authorities under point 8.

To constitute larceny, there must be an intent to steal, which involves the knowledge that the property belongs not to the taker; yet if all the facts concerning the title are known to the accused, and so the question is one merely of law whether the property is his or not, still he may show that he honestly believed it his through a misapprehension of the law. 1 Bishop on Criminal Law, sec. 240; *Rex* v. *Hall*, 3 Car. & P., 409; *Reg.* v. *Reed*, Car. & M., 306; *Com.* v. *Doane*, 1 Cush., 5; *The State* v. *Hames*, 17 Mo., 379; Wharton's Criminal Law, secs. 1866–1940; 2 Bishop on Criminal Law, sec. 762; 4 Abbott's Digest, sec. 153; 11 Johnson, 150; *Vanderhayden* v. *Young*, 11 Johns., 150.

There is considerable controversy in the cases upon the question as to whether to maintain a charge of larceny, it is necessary to show that the taking of the property was done *lucri causa;* but it is a point beyond all controversy, that the taking must be *either* for the purpose of some gain to the defendant, *or* for the purpose of depriving the owner (general or special) of his entire ownership in the property. 2 Bishop on Criminal Law, sec. 755; *Thompson* v. *People*, 4 Neb., 524; Wharton's Criminal Law, sec. 1751; *R.* v. *Holloway*, 2 Car. & Kir., 945; 2 Russell on Crimes, p. 93.

The court, while giving Blackstone's definition of lar-

ceny, entirely misapprehended and misconstrued the general terms employed in the definition; for Blackstone, after giving the definition, further observes: "The taking and carrying away must be *felonious;* that is, done *animo furandi,* or, as the civil law expresses it, *lucri causa.*" 2 Bishop on Criminal Law, sec. 756; 4 Bl. Com., 232. The term *lucri causa* means *for gain,* so that while the court gave to the jury Blackstone's definition of larceny, it afterwards in explaining it, emasculated it, by giving it a construction and meaning which Blackstone distinctly repudiates. But waiving all questions as to whether to constitute larceny the taking must be *lucri causa,* it is conceded by all authority on the subject that the taking must be for the purpose of depriving the owner of all his ownership in the property. 2 Bishop Criminal Law, sec. 755.

The right to controvert the showing made by a defendant for a new trial, on the ground of newly discovered evidence, has never been extended further than to permit the prosecution to show that the witnesses from whom the new evidence is to be obtained are not worthy of belief, and even this right seems to have been confined to civil cases. 3 Wharton's Criminal Law, sec. 3164; *Williams* v. *Baldwin,* 18 Johns, 489; *Parker* v. *Hardy,* 24 Pick, 246.

It is manifest from an examination of the indictment that both counts therein charged, and were intended to charge, the same offense. "The rule is clear that when two counts, setting out the same offense, occur, judgment will be arrested." Wharton's Criminal Law, vol. 1, sec. 426; *Campbell* v. *R.,* 11 Ad. & El. N. S., 800; *Nelson* v. *The People,* 5 Parker's C. R., 39.

The joining of two or more offenses in one count is never permitted, and as there is an attempt in this indictment to charge both larceny and embezzlement, in the first count, that count is bad, and the verdict being a general one, judgment should be arrested. *State* v. *Howe,* 1 Richardson, (S. C.) 260; *Reed* v. *The People,* 1 Parker's C. C., 481; *U. S.* v. *Sharp,* 1 Peter's C. C., 131; *Com.* v. *Symonds,* 2 Mass., 163.

Words in an indictment, which may have been grounds for the jury in finding their verdict, cannot be rejected as surplusage to support a conviction. *Com.* v. *Atwood*, 11 Mass., 93. The verdict being a general one in this case, and there being two counts in the indictment charging the same offense, by the American authorities a motion in arrest of judgment will lie. 1 Bishop on Crim. Pro., sec. 443; *Com.* v. *Symonds*, 2 Mass., 163; *State* v. *Nelson*, 8 N. H., 163; *State* v. *Fowler*, 8 Foster, (N. H.,) 184–194; Wharton's Criminal Law, secs. 414, 282.

*M. C. Brown*, for defendant in error.

The several counts of the indictment are sufficient in law. Bishop's Stat. Crimes, secs. 380, 381.

The words embezzle, steal and purloin, each partake somewhat of the meaning of the other, and each describes a manner in which the substantive offense may be committed. Abbott's Law Dict., vol. 1, page 421; *Sawin* v. *Martin*, 11 Allen, 439; *United States* v. *Conant*, Reporter No. 2, page 36; Horton's Precedents, vol. 2, sec. 1101; *Berry* v. *United States*, 2 Col. R., 186.

Where the value of the thing stolen or embezzled enters in any degree into the punishment, value must be alleged, but if the statute makes the stealing or embezzling a felony, without reference to value, then value need not be alleged. Bishop Crim. Law, vol. 1, secs. 340, 341 and 567; *Lope* v. *The State*, 20 Texas, 780; *Shepard* v. *The State*, 42 Ala., 431; *The State* v. *Daniels*, 32 Missouri, 558.

The second count in the indictment is or may be treated as surplusage; the word steal in the first count charging all that is charged in second count of indictment.

The court has jurisdiction of the offense described by the statute. The statute, properly construed, does not take away or narrow the jurisdiction given by the general law to territorial courts, sitting as district courts, &c., of the United States, but simply fixes the *locus* of trial; and the

language of statutes naming particular courts is used in a general sense, and covers territorial courts. *United States* v. *Haskins*, 3 Sawyer, 262, 271; *Berry* v. *United States*, 2 Col. R., 186.

The rulings of the court on evidence are not error, and even if wrong, work no injury to defendant. If there is error in the instructions, they are in favor of defendant, and he cannot complain. See Russell on Crimes, vol. 2, 8th ed., American par. 59, top 59 page. The principle involved being thus, to wit: The determination of the priority of contract, or bailment by the tortuous act of the bailee. See Russell as above; see also same, page 57 and 59; Wharton's Criminal Law, vol. 2, secs. 1862, 1863, *et seq.*; *Rex* v. *Maddox*, R. and R., 92; 1 Hale, 504; *Carr* v. *Brown*, 4 Mass. ; *Dunn* v. *Baldwin*, 8 Mass., 580; see also *Nichols* v. *People*, 17 N. Y., (3 E. D. Smith), 114.

The instructions of the court are excepted to as a whole, the exception being general, and if there is any part thereof that states the law correctly, then the exception is not well taken. See *Simonton* v. *Kelly*, 1st Montana, 363; *Strader* v. *White*, 2 Nebraska, 360; *Dodge* v. *The People*, 4 id, 231; *Smith* v. *State*, 4 id., 288.

And again, if there is error in ruling on evidence and instructions, the exceptions are not preserved by a motion for new trial filed in proper time, and a motion to dismiss the writ of error for this reason should be sustained; at least the court will not consider the bill of exceptions in this behalf, the motion for a new trial not having been filed in time, and no showing made for delay.

The motion for new trial, based upon newly discovered evidence, does not come within the rule, and was properly overruled. *Yawez* v. *State*, 6 Tex. Crim. Rep., 429; *Hutchinson* v. *State*, id., 468; *Darnell* v. *State*, id., 482.

Motion in arrest must be filed within three days after verdict. Compiled Laws of Wyo., page 163, sec. 187. This was not done, and for this reason the court's ruling in refusing the same was not error. *Valentine* v. *State*, 6

Tex. Crim. Rep., 439.  The whole case considered shows a deliberate fraud upon the government, a crime deliberately planned and perpetrated, and should be rigorously punished, and no reversal of judgment should be tolerated upon slight technicalities, wherein the plaintiff in error is in no wise injured.

PECK, J.  The plaintiff in error was convicted in the first district court under section one of the Federal statute of March 3d, 1875, entitled, "An act to punish certain larcenies, and the receivers of stolen goods," which section is: "that any person, who shall embezzle, steal or purloin any money, goods, chattels, records or property of the United States, shall be deemed guilty of felony, and on conviction thereof, before the district or circuit court of the United States in the district wherein said offense may have been committed, or into which he shall carry or have in possession of said property, so embezzled, stolen or purloined, shall be punished therefor by imprisonment, at hard labor, in the penitentiary, not exceeding five years, or by a fine, not exceeding five thousand dollars, or both at the discretion of the court, before which he shall be convicted."  He objects that that court had no jurisdiction over the case.  If the record discloses the defect, the objection should prevail, the judgment be reversed, the case dismissed, and the plaintiff in error discharged.  The section limits the jurisdiction over the offenses, which it designates, to the district and circuit courts of the United States.  Is the first district court of the Territory either of those tribunals?

The organic act provides that there shall be a supreme court in the Territory; that the latter shall be divided into three judicial districts, and a district court held in each by a judge of the supreme court; that the supreme and district courts shall have chancery and common law jurisdiction, for the redress of all wrongs committed against the constitution and laws of the United States; that each of these district courts shall have the same jurisdiction in all cases

arising under that constitution and those laws, as is vested in the circuit and district courts of the United States; that writs of error, bills of exception and appeals shall lie from the final decisions of the district courts to the supreme court; and writs of error and appeals from the latter to the supreme court of the United States, when the amount in controversy exceeds one thousand dollars. Section 1910 of the first revision of the United States Statutes—the revision made at the first session of the forty-third congress—re-enacts and applies to this and other territories the provision that their district courts shall have the same jurisdiction in all cases arising under the constitution and laws of the United States, as is vested in the circuit and district courts of the United States; and that writs of error and appeals may be had in those cases to the territorial supreme courts, as in other cases.

The Federal government provides and compensates the judges, clerks and marshals for the territorial district courts, and controls their tenures; requires the marshals to execute all processes issuing from those courts, when acting as circuit and district courts of the United States, or entertaining cases which arise under the constitution and laws of the government. Thus these territorial district courts are instituted by that government; are organized by it in respect to officers, jurisdictional area, jurisdiction of subject-matter—all this for the administration of its constitution and laws, for this purpose embodying the entire jurisdiction of its circuit and district courts in cases arising thereunder; their jurisdictional areas are styled judicial districts, and themselves district courts. Why are they not in substance, attribute and function, district courts of the United States in the sense of the act of March 3d, 1875? Two courts may be similar in jurisdiction of subject-matter, but dissimilar in style, laws, source, also in subject-matter. The organic act and the revision, by conferring upon the district courts of the Territory the above described jurisdiction of the district courts of the United

States, treat the two as constituting distinct classes; and recognizes the necessity of special legislation to clothe the former with any of the power of the latter.

In respect to source, both classes originate in the Federal government, but from entirely distinct powers or subordidate sources within that general source; and the style, laws and subject-matter of each are referrible only to its own special power and subordinate source. Hence in the legislative and judicial speech of that government the two classes have uniformly been treated as organically distinct. The third article of the constitution at section one provides that, "The judicial power of the United States shall be vested in a supreme court, and in such inferior courts as the congress may, from time to time, ordain and establish;" whose judges shall hold their offices during good behavior; and at section second for the subject-matter of the jurisdiction of those courts. The circuit and district courts of the United States, so called, have always been limited to state area; and provided with judges, appointed to hold their offices during good behavior; they have been, and they could be created, organized and maintained only under this article. This alone disposes of the question; but the law upon the subject has been developed far beyond this point.

The first article at the eighth section authorizes the United States to carry on war, and the second article at the second section to make treaties; hence one article empowers it to acquire territory by conquest, the other to acquire it by compact; the fourth article at the third section authorizes congress to make all needful rules and regulations respecting the territories, and the eighth article at the first section clothes it with exclusive legislative power over the seat of government.

Whatever merit there may be in the proposition that all the parts of the constitution, which are in *pari materia*, are to be construed in connection, and as far as may be, in harmony; that the terms of the third article are equivalent to the declaration, that, "the judicial power of the United

States shall be vested *only* in one supreme court, and in such inferior courts," etc., that is, are equivalent to the declaration, that, " The *entire* judicial power of the United States shall be vested in one supreme court, and in such inferior courts," etc., and are therefore the sole repository in the constitution of judicial power; that congress can ordain and establish only inferior courts; that, as out of this repository congress has ordained and established the circuit and district courts of the United States and the court of claims out of it, under the eighth article and first section, the supreme court of the district of Columbia—and out of it may ordain and establish such other inferior courts as the exigencies of the Federal service shall require—so out of it alone can congress, under the sovereignty implied in the acquisition of territory by conquest and treaty, and that expressed in the authority to make needful rules and regulations concerning the Federal territory, ordain and establish courts for the territories; and though this construction of the third article would have given to it completness of scope and efficiency, would have secured to the last mentioned courts judges holding their offices during good behavior, but subject to termination on the extinction of the courts, (as is the case with all life tenures in respect to the offices to which they are attached,) a result seemingly in accordance with the letter and spirit of the constitution, for its clearly apparent purpose was to render all judges of Federal appointment independent, and for a reason common to all; whatever merit there may be in the proposition, it is abstract, because it has been entirely concluded by the decisions of the supreme court of the United States.

In the *American Insurance Co.* and the *Ocean Insurance Co.* against *Cauter*, 1 Pet., 511, that court decided that the courts ordained and established under the third article, are constitutional, not legislative; can alone exercise the jurisdiction conferred by it; and are limited to the states —that the territorial courts are legislative, not constitutional; ordained and established only out of the incidental sovereignty

acquired by conquest or treaty, or out of the power to make needful rules and regulations respecting the territories; can exercise no jurisdiction but what is derived. from those two sources, and are limited to the territories. This doctrine remains in the court. Let us now pass to the latest expressions upon the subject.

In *Clinton et al.* against *Englebrecht*, 13 Wall., 434, the plaintiff below, defendant in error, sued Clinton and others in the third district court of Utah, to recover under a territorial statute a penalty for a trespass; the case was tried before a jury, which had been selected as under the judiciary act for juries for the circuit and district courts of the· United States. In issuing the venire and selecting the jury the territorial court acted upon the theory, that it was an United States court of that class. The defendants below challenged the array, and excepted to a decision, overruling the challenge; the exception was the only question before the supreme court of the United States, was unanimously sustained, and the judgment reversed. In support of the panel the defendant in error claimed that the territorial jury statute was so defective, that no valid panel could be obtained under it, and therefore the judiciary act must apply; to which the court answered in effect, that the question was not whether the territorial law was adequate, but whether the Federal laws applied; for, if the latter did not apply, the array was void, though the former law was inadequate.

· Explaining its conclusion, the court said that the territorial courts were only legislative, created under the clause of the Constitution which authorizes congress to make all needful rules and regulations respecting the territories; that there was no district court of the United States in Utah, consequently that the third district court, whose proceedings were under review, was not a district court of the United States; that the venire might be a process suitable for the exercise of its jurisdiction in cases arising under the constitution and laws of that government, when acting

as its circuit or district court, but that the selection of the jury must be made under the territorial law; and that that was especially true of a case arising, not under any act of Congress, but exclusively, like the case in the record, under the territorial law. The supreme court might have decided the case solely upon the ground that it arose exclusively under a territorial statute, and was, therefore, triable only on the territorial side of the court, whatever might be the status of its Federal side in respect to jurisdiction; and in deciding it also, upon the ulterior point as to what that status was, the purpose of the court seems to have been to bury doubt upon the subject.

In *Reynolds* against *the United States of America*, 8 Otto, 145, the plaintiff in error was indicted in the third district court of Utah for bigamy, under section 5352 of the U. S. Rev. Stat.; and plead in abatement that he was indicted by a jury of fifteen, provided under the territorial act; whereas he should have been presented, if at all, before a jury of not less than sixteen nor more than twenty-three, provided by section 808 of the U. S. Rev. Stat. in ch. 15, as to juries, and Tit. 13, as to the judiciary: the plea was overruled, and he was convicted. Though not so stated in terms in the report of the case, it is clear that the decision was on a general demurrer to the plea. The case went to the supreme court of the United States on the plea; and the decision overruling it, was there affirmed, and upon the ground, stated with unmistakable explicitness, that the section applied only to the circuit and district courts of the United States; and that they did not include the territorial courts, though they had, in cases arising under the constitution and laws of that government, the same jurisdiction that is vested in its circuit and district courts. That court decided the insurance cases against Cauter in 1878, and Clinton and others against Englebrecht in 1871, defining those courts to be a class exclusive of the territorial district courts; the statute of March 3, 1875, was passed in the light of those decisions, and must be construed as designating in accord-

ance with them the courts to which it commits the jurisdiction that it creates. In Reynolds against the United States of America, that court in 1878 re-affirmed the definition, and thus limited the act to the definition. This construction must be treated as final.

With the profound respect which is due from me to our appellate court, and the truthful candor which is incident to my office as a member of this court, I am constrained to say, that there is manifest error on the part of that court in this,—in saying that the territorial courts are not constitutional because they are legislative. These courts, the supreme court of the District of Columbia, the court of claims and the circuit and district courts of the United States are all legislative, because created by congress; but also constitutional, because created under the Constitution,—as constitutional as is the supreme court of the United States; it is created by, they under the Constitution; all have in it their origin; and all exist to perform duties, that it has devolved upon the Federal government.

This constitutional essence must exist in each, whether the power to create inferior courts, contemplated by the third article, and the power to create territorial courts, are separate or one. Congress can ordain and establish courts only by Federal authority, for Federal purposes, and subject to Federal control; and what it ordains and establishes must be constitutional, because legislative—legislative, because constitutional. Hence the proposition that the courts of the territories as legislative are not constitutional, is not only superfluous to the elucidation of, but in conflict with the result to which that court arrived, namely, that the third article did not embrace the territories.

As the first district court of this territory had no jurisdiction under the statute of March 3d, 1875, its judgment should be treated accordingly; but as the other members of this court hold that it had jurisdiction, it is necessary to determine whether its judgment shall be affirmed or reversed upon the merits.

The indictment consists of two counts: the first charges, "that on the 10th day of November in the year of our Lord one thousand eight hundred and seventy-six Dwight J. McCann, yeoman, late of the district aforesaid, at and within the district aforesaid, twenty thousand pounds of sugar, of the value of ten cents per pound, of the goods, chattels and property of the United States of America, then and there being found, then and there feloniously and fraudulently did embezzle, steal and purloin, contrary to the forces of the act of congress, in such case made and provided," i. e.; the second charges "larceny in common form as to twenty thousand pounds of sugar of the value of ten cents per pound, the goods, chattels and property of the plaintiff below, and as committed within the district, and against the form of the act of congress, in such case made and provided." The defendant demurred to the indictment; the demurrer was overruled, and an exception taken; he then plead *not guilty* to the indictment, was tried. a general verdict of guilty was rendered, and sentence pronounced upon the verdict. Whatever principle the demurrer involved against the defendant, he was bound by; and whatever it involved for him, he was entitled to the benefit of at the trial.

Is the first count good? And *First*, as to the charge of embezzlement. Embezzlement at the common law is the fraudulent misappropriation by a person occupying a fiduciary relation, of portable property which he has received into his possession under it; the misappropriation constitutes a breach of the trust. It is there a misdemeanor in the case of public officers in respect to the property entrusted to them. With that exception it exists, as an offense, altogether by statute; consists of common law embezzlement, applied only to the property and trust, which the statute designates, is an extension of the common law only to those cases. Larceny is the fraudulent taking and carrying away of the personal property of another from his possession. The offenses are alike, in that they are committed by the tor-

tious taking, without the consent of the party to whom the property belongs; in the former upon the possession of the offender, not involving a trespass; in the latter upon that of the other party, involving a trespass; hence the offenses are radically different; and the facts which constitute the one, cannot be employed to establish the other. The two offenses are legal ideas founded on, and drawn from fixed and peculiar elements of fact. The count charges the defendant with embezzlement, without alleging its constituent facts; charges therefore a mere legal conclusion, leaving it impossible to determine whether the offense was committed, and the conclusion correct. As to all other offenses it is an invariable rule of pleading at the common law that the indictment must set forth facts sufficient to constitute the given offense, so as to notify the accused of what he has to meet; and unless it does, it charges nothing on which an issue can be raised by a plea of not guilty; the rule is founded on a principle that inheres in all other criminal cases, and equally applies to that of embezzlement. Hence an indictment for this offense must set forth the actual fiduciary relation and its breach. The English statutes of embezzlement are the 21 Hen. 8, ch. 7; 39 Geo. 3, ch. 85; 53 Geo. 3, ch. 63; 7 and 8 Geo. 4, ch. 29, and the 25 and 26 Vict., ch. 96; they all extend the offense to private trusts, Chitty and Archibald prescribe the rule, and corresponding forms; and correctly represent the English practice.

The rule is recognized by the supreme court of the United States; that controls this court, and it is immaterial what rule obtains in the states of the Union. Nevertheless it is proper to add that it prevails in Massachusetts, New York, New Jersey and Michigan; and that after careful search I have not found a different one in any other of the states, and have no reason to doubt that the rule is uniform in the state practice. A departure could not exist except by statute; and the strongest presumption would oppose the idea of such an intent; and an American statute to that effect could not stand, under the Constitution. The fifth

amendment of the latter declares that "no person shall be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury;" the provision is worthless, unless it intends a presentment or an indictment that contains substance enough to admit of an issue of guilt or innocence to be raised upon it. Therefore the count is bad for the reason that it does not contain the constituent elements of the charge.

It fails in another particular. Not alleging those facts, it does not identify the offense upon the record; and therefore does not secure the accused in his right to plead *autre fois acquit* or *autre fois convict* to a second prosecution for the offense. This right is made constitutional by that amendment; it declares that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb"; which, according to the 18 Wall, 163, *ex parte Lange*, means that he shall not be put in jeopardy of a second punishment for the same offense. This provision of the amendment erects the common law upon the subject into a constitutional sanctity.

To avoid the application of the rule, the government admitting that it applies to an offense existing at the common law, to which the statute affixes a penalty, but denying that it applies to an offense created by statute, claims that the act of March 3d, 1875, creates its offense. This proposition is based upon two grounds: The first, that notwithstanding embezzlement is a *tort* at the common law, to embezzle and to commit embezzlement are not the same, citing 11 Allen, 439, *Sawin* against *Martin*, and 1 Abbott's Law Dic., 422 and notes, and that a distinction between the two is established by section 5209 of the U. S. Rev. Stat.; and that the section has been so construed by the case of the *United States* against *Conant*, 29 Reporter, No. 2, for 1880, at page 36; and is also established by sections 5439, 5453, 5471, 5475, 5460, 5467, 5469, 5488, 5490, 5492, 5479 and 5401, of the same statutes; the second, that if the two acts are identical, embezzlement is not an offense at the

common law; and hence that upon either ground the statute of March 3d creates its offense; that upon either ground the words of the statute may be followed in counting.

As to the first ground. The learned counsel for the government does not indicate what "to embezzle" means, if in law it does not signify "to commit embezzlement." "To embezzle" is the verb correlative to "embezzlement," the noun,—is the only verb which completely answers to the noun; signifies to commit embezzlement; as a verb involves all the elements which the noun, as a noun, involves; and therefore describes alike the *tort* which constitutes at the common law the breach of trust, and under the statute the offense; the noun signifying the thing committed, the verb its commission. The authorities above mentioned, as cited to the contrary, contain no hint of the alleged distinction, but proved wholly upon the opposite idea; nor can a foundation for the distinction possibly exist except in a statute, and by its arbitrary use of the verb in a sense variant from its standard, popular and technical sense; and such a statute can only be a rule for itself.

Again, as to the first ground. Section 5209 declares that a president, director, cashier, teller or agent of an association, who "embezzles" its "moneys, funds or credits," shall be deemed guilty of a misdemeanor; employs the verb explicitly in its common law sense, and the term could not be applied under the section in any other, except by a sheer perversion of the text; and so *United States* against *Conant*, cited to the contrary, adjudicates. Each of the sections, 5439, 5453, 5471, and 5475, describes by the verb, and contains no other description of the intended crime, than what the verb imports, nothing to indicate that it is not employed in the common law sense; so that the sections must be understood as using it in that sense; otherwise they would be meaningless and impractical. Section 5460 describes by the verb, applying it to trustees of government property. Section 5467 describes in the same

way; and cannot be read, as intending an application to any but trustees. Section 5469 employs the verb either in the common law sense, or comparing it with section 5467 for larceny; I am inclined to think in the latter. Each of the sections 5488, 5490, and 5492, employ the term "embezzlement"; apply it only to trustees of government funds, and to conduct which would constitute embezzlement under private trust at the common law. Each of the sections, 5489 and 5491, employs the same term; applies it only to such trustees, and to such conduct as would be embezzlement under a private trust at the common law; also to conduct such as would be only negligence under a private trust at common law. I am wholly unable to perceive that the citations from the United States Statutes in anywise countenance the distinction claimed of them by the government; with the exception which I have designated, the provisions cited strictly follow the common law, simply extending its application; and the exceptions framed upon entirely other grounds, and furnish no rule but for their own application.

As to the second ground. The rule that, in counting upon a statutory offense, the words of the statute may be followed, is not intended to deprive the accused of the benefit of fine apprised, or to relieve the accuser of the necessity of apprising him of the facts that constitute the given crime—to enable the one to charge, and to compel the other to attempt to take issue upon a mere legal conclusion. The rule recognizes the right and the duty; and its observance satisfies both. Under the statute, equally as at the common law, the right to defend by plea exists; and it can be exercised only as a method of raising an issue—must therefore be preceded by facts, calling for, and to which it can be an answer. If the statute describes the crime that it creates, in terms, and without the necessity of resorting to the common law for an interpretation,—that is, describes completely of itself the act or acts that it makes criminal,—it must suffice, in counting upon the statute, to

follow it; but, if it describes by terms which necessitate a reference to the common law for the sense,—that is, does not describe completely of itself, but does describe by adopting a common law signification,—it describes by the common law, embodies it, sets it forth by relation, and the counting must be by that law, or it cannot follow, cannot satisfy the statute. A statute, in creating a crime, defines it; and may employ for the purpose a proposition of fact, or one of law only; all the ingredients of fact that are elemental to the definition, must be alleged, so as to bring the defendant precisely and clearly within the statute; if that can be done by simply following the words of the act, that will do; if not, other allegations must be used. Hence the rule, to follow the words, is safe only when its effect will be to follow the act, to keep in its path. This accords with Hawkins, who, in his Pleas of the Crown in Book 2, ch. 25, sec. 113, says: "It does not seem to be always sufficient to pursue the very words of the statute, unless by so doing you fully, directly and expressly allege the fact, in the doing or not doing whereof the offense consists, without the least uncertainty or ambiguity." The cases of the *United States* against *Mills*, 9 Pet., 138, and the *United States* against *Gooding*, 12 Whea., 460, which involved the question, were decided according to the rule, as it is stated by Hawkins. They are conclusive upon us. It is, however, worthy of note, that the case of the *State* against *Stimson*, 25 New Jersey Law, was decided upon this rule. This view restricts the rule of following the words of a statute, in counting upon a statutory crime, to consistency with the statute, the rights of the accused and principle. A different view would, when the statute describes the crime which it creates, by a reference to the common law, confine the count to the statement of a worthless legal conclusion; and employ the statute to frustrate the law of pleading and the constitution. The act of March 3 describes its crime of embezzlement by a reference to the common law.

Secondly, as to the charge of stealing. It is made only by stating a legal conclusion. The government seeks to avoid the necessity of charging a common law offense in a common law method, by alleging its constituent facts, by the position that the verb, " to steal," is not employed in the act as descriptive of a common law, but if descriptive of any, only of a statutory offense. I cannot concur in the proposition. A statute presumably uses a technical term in its technical sense, unless another is clearly intended. Larceny is a technical common law term; stealing is its technical common law synonym; to steal is the verb of stealing or larceny, the noun; to steal and to commit larceny are synonymous; the framing of a count for larceny under this statute required that it should have been framed as at the common law. Hence as to this offense the act was not properly counted on.

Thirdly, as to the charge of purloining: The government applies to the verb, " to purloin," the same theory which it does to the verb, " to steal." If a statute employs a term which has not a technical law, but has a standard popular meaning, it presumably employs it in the latter, unless another sense is clearly intended. Purloining is not a technical law—is a standard popular term—and means larceny; " to purloin" is its verb, and therefore stands in the statute as a mere repetition, in an untechnical form, of what precedes in the clause as to stealing, — is superfluous, and presents no additional views as to the duty of pleading.

Again, the count alleges that, by one and the same act the defendent embezzled and stole the sugar: by one act committed upon it two dissimilar crimes, the commission of one of which negates the possibility of the commission of the other. Thus the count nullifies itself, and charges nothing.

As it tendered no issue, the plea raised no issue upon it; it could not sustain a verdict of guilty; and the demurrer as to it was well taken.

Therefore it was the duty of the district court to disre-

gard the first count on the trial had under the plea. That would have been equally its duty, had there been no demurrer, because a court should of its own motion, refuse to try an immaterial issue of facts.

The remaining count is in common form for larceny: was good; tendered an issue of fact, capable of sustaining a verdict of guilty; and the plea raised an issue upon it. Can the present verdict be sustained? If not, can the defendant avail himself of the objection?

The evidence of the prosecution tended to show that on the 21st of September, 1876, McCann contracted with the government to transport for it for hire to sundry Indian agencies, Indian supplies, as he should receive them from it for the purpose; to furnish incidental storage between reception and delivery; and to deliver them in the same good order and condition in which they were when received—this contract imposing upon him the risk of the property, and conferring upon him, as against the government, the right of possession during the transit for the purposes of the contract: That on the 14th day of October of that year he received from the government, under the contract, at Philadelphia, fifty-two barrels of sugar; that in November following it reached Cheyenne, by the Union Pacific Railroad under his care, and was then stored by the railroad company here in its warehouse, subject to his order; that he soon removed it to a private one here, where he changed it into sacks, sent the sacks to Deadwood, and there sold it upon his own account; and that the breaking of bulk, change of package and subsequent sale were parts of, and in consummation of the purpose, with which he removed the sugar to the private warehouse. There the evidence for the prosecution stood, when it rested in its opening, and at the close of the entire testimony. The prosecution was bound by the tendency of its evidence. Embezzlement was the only crime that could be predicated of it: so that the government charged larceny, and proved embezzlement, if anything—charged one crime, and proved another. Following

the evidence, the jury must have found a verdict for embezzlement, and the record, if allowed to stand, will not protect the accused from a future prosecution for the same offense. The government and the accused were respectively interested in, and bound by the common law and the constitutional inhibition upon the subject. The inhibition could not be waived: the inability to waive is not forcibly and fully illustrated by the *People* against *Cancimi*, 18 N. Y., 128. As there was no evidence tending to sustain the count, there was then none to go to the jury; and it was the right of the defense in its election, either at the close of the opening evidence for the prosecution, or at the close of the whole evidence, to have the jury directed to return a verdict of acquittal; omitting to do so, it was the duty of the court of its own motion to so direct; it was equally bound by the rule, and could not shape the case to an abortive result.

Again, the above-mentioned evidence was uncontradicted. At the request of the government, and subject to the exception of the defendant, the court charged that, "if a bailee, who has charge of the goods or property of another, with intent to steal, breaks bulk and removes the property from the original package, the act of breaking bulk for a purpose inconsistent with the object of the bailment, and for the further purpose of feloniously converting the same to his own use, constitutes in itself the crime of larceny." The instruction was erroneous in four particulars:

It allowed the jury to determine the verdict: it misstated the testimony in assuming, and therefore in stating in effect that it tended to establish a conversion by breaking the bulk; whereas its only tendency to establish a conversion was by shifting to the private warehouse; for that, if anything, was a complete appropriation of dominion over the property. But whether the appropriation was consummated by shifting from one warehouse to another, or by shifting from barrel to sack, and though it was done feloniously, the instruction misstated the law by denominating it larceny;

because the appropriation lacked the characteristic of larceny, it not having been committed by tresspass: and the law was equally misstated in predicating of the conversion the intent to steal.   The verdict is explainable only upon one of two hypotheses: either that the jury, finding that a felonious conversion had been committed, treated it as embezzlement (herein understanding the law better than the court did), and returned a verdict for larceny; or, misled by the instruction, treated it as larceny, and returned a verdict accordingly.   If the former was, the case, they returned a verdict for a crime which was proved, but not charged; if the latter was the case, they returned a verdict for a crime which was charged but not proved. In either aspect the verdict is void, and a new trial should be ordered.   This leaves it open to the government to elect its course; whether to prosecute this indictment further, or to apply to the grand jury for one that fits the proofs.   It is due to the learned counsel, who represents the government upon this appeal, to say that he is not responsible for the fact that the indictment and proofs do not fit.   The further prosecution of the case must proceed upon the same transaction, which appears upon the present evidence of the government; and must be fruitless, if the foregoing considerations, relative to the merits, are sound. In this view it is superfluous for the purpose of a new trial to consider the other questions, which appear upon the record, as they are subordinate; and their determination could not relieve the case of the primary defects, already considered, that enter into the merits.   But Mr. Justice Sener votes for an affirmance, and Mr. Justice Blair for a new trial: and I understand the latter to so vote on one question only, a question belonging to the merits, and to what I have called the subordinate questions.   As I concur in the result which he has reached upon the subject, it is desirable that I state my views upon it; and this I proceed to do.

The prosecution introduced in its opening, evidence

which tended to show that McCann had feloniously diverted
the sugar; and on this testimony claimed a verdict. Evi-
dence was also introduced, which tended to show that
under the contract the sugar was not to have been shipped
from Philadelphia until the spring of 1877, when it was to
have been sent by the Missouri river to the Crow and
Blackfoot agencies in Montana; and was erroneously sent
in the autumn of 1876 west of Omaha by rail; that he
notified the commissioner of the Indian bureau of the mis-
shipment, and thereupon was instructed by the latter to
divert it to the Spotted Tail agency; that on the next day,
October 29th, 1876, he wrote to the bureau for leave, as a
matter of economy to the government and himself, to sell
the sugar on his own account, upon the condition of replac-
ing it by a spring purchase at Philadelphia of the same
amount, to be sent from there in the spring by the river
to the Crow and Blackfeet agency; and that, after the
direction had been given to divert to the Spotted Tail
agency, another arrangement was made between him and
the bureau respecting the property. In this state of the
evidence, and at this point, and on his direct examination
as a witness for himself, he was asked to state that further
arrangement. The question was excluded, and an excep-
tion taken. The admission or exclusion was determinable
by the theory of the prosecution, as presented by its testi-
mony, and in connection with all the evidence therein on
both sides, the question called for an answer, that might
have shown an arrangement between him and the bureau
either by assent to the letter, or for some other diversion
of the sugar. Had the answer tended to show such arrange-
ment, it would have shown an authority to him to appro-
priate the sugar; and it would have been his right to go to
the jury upon the question, whether he obtained the au-
thority, believed that the bureau could give it, and, in com-
mitting the appropriation complained of, kept within the
authority; and it would have been the duty of the court to
instruct, and of the jury to find, according to this right—

that is, it would have been the duty of the court to instruct, and of the jury to find, if these three propositions were true, that he was not guilty; and had the answer shown only a belief on his part that the authority was and should be given, and that he kept within it, he would equally have been entitled to a verdict.

A new trial should be ordered.

BLAIR, J. This cause is brought here on a writ of error by the plaintiff in error for review. From the record it appears that at a district court of the first judicial district, sitting at Cheyenne, in the county of Laramie, at the November term thereof, A. D. 1877, the grand jury found an indictment against the plaintiff in error for felony. The indictment contains two counts. The first count charges, " That on the 10th day of November in the year of our Lord, one thousand eight hundred and seventy-six, Dwight J. McCann (the plaintiff in error), yeoman, late of the district aforesaid, at and within the district aforesaid, twenty thousand pounds of sugar, at the value of ten cents per pound, of the goods and chattels and property of the United States of America, then and there being found, then and there feloniously and fraudulently did embezzle, steal and purloin contrary, etc."

The second count is similar to the first, except that it charges, that the plaintiff in error feloniously did take, steal and carry away, the sugar in the first count described.

The plaintiff in error appeared and filed a demurrer to the indictment, alleging in substance : First, That the indictment and matters therein contained, were not sufficient in law, etc. Second, That the first count of said indictment, and the matters therein contained as stated, were not sufficient in law, etc. Third, That the second count of said indictment was no part thereof, and further that the second count, and the matters therein contained as stated, were not sufficient in law, etc.

It seems to be admitted that the indictment was drawn under an act of congress approved March 3d, 1875, which reads as follows: "That any person who shall embezzle, steal or purloin any money, goods, chattels, records or property of the United States shall be deemed guilty of felony, and on conviction thereof before the district or circuit court of the United States, in the district wherein said offense may have been committed, or into which he shall carry, or have in possession of said property so embezzled, stolen or purloined, shall be punished therefor by imprisonment at hard labor, in the penitentiary, not exceeding five years, or by a fine not exceeding five thousand dollars, or both, at the discretion of the court before which he shall be convicted."

The demurrer was overruled by the court and the defendant excepted.

The first question which would seem to require consideration, as claimed to be reached by the demurrer, is that of jurisdiction.

It will be observed that the first part of the above act makes it a felony for any one to embezzle, steal or purloin any money, goods, chattels, records or property of the United States, and where the crime thus defined is committed and the person guilty of the offense convicted before the district or circuit court of the United States, in the district wherein said offense may have been committed, or into which he shall carry, or have in possession of said property so embezzled, stolen or purloined, the punishment prescribed by the statute follows. It is therefore contended as a legal conclusion, that before any penalty can be inflicted under this section, the party charged with committing the offense must be duly convicted, and convicted not only before a court having the same jurisdiction as the courts mentioned in the statute, but before a court recognized by the constitution as a district or circuit court of the United States, and no other.

The organic act of this territory in referring to the

supreme and district courts, created by that act, says, "And the said supreme and district courts respectively, shall possess chancery as well as common law jurisdiction and authority for redress of all wrongs committed against the constitution or laws of the United States, or of the territory affecting persons or property. But in order that there might be no doubt as to whether the district courts of the territory were by the above provision clothed with the same authority and jurisdiction of the circuit and district courts of the United States, congress ingrafted in the organic act a further clause, which not only settled that question beyond all controversy, but makes manifest the intention of congress by so doing. It is as follows: "And each of the said district courts, shall have and exercise the same jurisdiction in all cases arising under the constitution and laws of the United States, as is vested in the circuit and district courts of the United States."

It would seem not only useless but an unprofitable task after the decisions in the case of *Benner* v. *Porter*, 9 Howard; *American Insurance Company* v. *Cauter*, 1 Peters; and *Clinton* v. *Englebrecht*, 13 Wallace, to attempt to maintain the proposition that there is such a court as a district court of the United States in the sense of the Constitution, in the Territory of Wyoming.

Chief Justice Chase in his opinion in the last named case has I think, closed the door to further discussion in that regard.

To maintain the proposition that the court below had jurisdiction in this case, it must be done on some other theory; that theory should be founded on justice and consonant with reason.

Having now settled beyond all controversy that the district courts of this Territory, are vested with all the power, authority and jurisdiction that is vested in and can be exercised by the district courts of the United States, and that congress intended they should be, the question now returns with all its force, whether under section one, under which

the indictment in this case was drawn, the court below had jurisdiction in this case. In construing section one, above referred to, it is but fair to keep in view the power and jurisdiction conferred by congress on the district courts by the organic act, as well as the decisions in regard to whether the district courts in this Territory are district courts of the United States.

In order therefore to arrive at a proper solution of the question herein presented, and in order to ascertain the true intent of congress and give a reasonable construction to section one, we must consider the fact that congress had, long prior to the enactment of section one, passed the organic act, and that most if not all the decisions before referred to had been rendered before section one became a law. No one, I presume will contend for a moment that congress intended that section one should apply only to district courts in the states; this would be equivalent to saying that it is only in the states, where such offenses are or can be committed—an indirect compliment to the inhabitants of the Territory, however just, is one in my opinion not likely soon to be paid.

After much reflection, but still not wholly free from doubt, I have come to the conclusion that congress did not use the words district or circuit courts of the United States in section one, in the sense of the Constitution, but in a more popular and liberal sense, which gave, and was intended to give those district courts which were vested and clothed with the same, or like authority and jurisdiction as is vested in the circuit and district courts of the United States in the sense of the Constitution, and consequently, with full authority and jurisdiction to try and punish all persons found guilty of the offense created by, and described in section one.

That the district courts of Wyoming Territory are in one sense district courts of the United States, I entertain no doubt: but as I have remarked before, that while they cannot in a constitutional sense be called district courts of the

United States, and are designated by the supreme court as legislative courts, they are nevertheless for all purposes district courts of the United States.

I am not unmindful of the fact that I have not given the act in question that strict and literal construction contended for by counsel as the rule in criminal cases, but to do otherwise than I have done I would have to pre-suppose that congress, composed as it is of some men of the highest legal attainments to be found in the land, and the chosen representatives of an admiring constituency, had committed at least a most unpardonable blunder, if nothing more.

I pass now to consider the sufficiency of the indictment, about which I have but little to say. One cannot examine the record in this case without being forced to the conclusion that the prosecution relied wholly upon the second count, and not on the first. Hence I shall not review the alleged errors as to the first. The second count I hold sufficient. The only objection urged against it was, that in commencing this count, the word "*An*," is used instead of "*And*," and therefore it was connected in no way with the caption of the indictment. All I have to say as to this objection is, that nothing short of an act of a Wyoming legislature could induce me to decide that a count in an indictment was bad, for the omission of one letter which it should contain. The proposition, I take it, will hardly be questioned, that where an indictment contains more than one count, if one be good, it will support a general verdict.

This brings me to consider the much graver questions which arise in this case, and which calls for the most patient, thoughtful and thorough investigation.

It is apparent from the record that the defendant did not deny, on the trial in the court below, the appropriation of the property, which is charged to be the subject of larceny, but on the contrary admitted its appropriation, but sought to remove the presumption of guilt which would legally follow the conversion of the same by showing a claim of right in the property so appropriated, in himself. It is also

evident from the record, that the defendant's claim, or pretended claim of right in the property, was derived through the commissioner of Indian affairs, with whom he had contracted to deliver government goods, at certain agencies. With this short review of what the record discloses on this point in the case, we will be the better prepared to consider rightly the materiality and competency of the evidence sought to be offered by the defendant as to his alleged claim of right to the property described in the indictment.

The defendant, being on the witness stand, was asked in substance if he had made any arrangement with the agent of the government, in respect to the sugar in question. Having given an affirmative answer to this question, it was followed up as follows: "You may now state what that arrangement was." Objection being made the court sustained the objection, and refused to let the witness respond to the question.

Was the evidence sought to be offered relevant, material or competent? If it was, it was error in the court to reject it; or to state the question in a different way, but to the same effect, was it competent for the defendant under the indictment, after admitting a conversion of the sugar, to show a claim of right in himself? It certainly was. However frivolous or unfounded this claim of right might have been, it should have gone to the jury for their consideration. If it proved to be frivolous and unfounded in the judgment of the jury, it would weigh the more heavily against him. If, however, it proved the contrary, it might have relieved him from the least suspicion of criminal intent, and secured him a speedy deliverance. The grounds of objection to the evidence were, first, that it was not permissible to vary the terms of the written contract, under which the defendant had possession of the sugar; second, because in no event had the commissioner a right to authorize a diversion of the goods purchased under act of Congress for the use of a given Indian tribe.

It appears that the sugar mentioned in the indictment

was, by mistake, sent in the direction of Montana, via Corinne. The defendant telegraphs the commissioner, inquiring if it was not an error or mistake, and asking instructions. The acting commissioner replied, directing the sugar to be sent to Spotted Tail agency.

The defendant claims he wrote to the commissioner and asked permission to dispose of the goods at Salt Lake, and to replace the same in the spring.

It further appears that the goods were returned to Cheyenne and stored, and it was at that place, it is charged, the defendant converted them to his own use. By whose authority they were returned to Cheyenne does not appear. It was in this state of the case that the defendant offered to prove an arrangement with the commissioner of Indian affairs, by which the defendant might dispose of the sugar, and supply an equal amount the following spring.

The first ground for ruling out this evidence I think wholly untenable. Had it been a civil action there would have been some room for doubt as to its competency, but being a criminal prosecution, to my mind there can be none.

As to the second ground of objection, assuming that the defendant had made such an arrangement, as he claimed he had made with the acting commissioner, had he a right to presume, as a reasonable man, that the commissioner was acting in good faith, with full authority to act in the premises, that he had a right as the agent of the government, to exercise a sound discretion in regard to matters that cannot be foreseen; notably, such a mistake or error as is claimed to have been made in the shipment of the sugar. It seems to me he had. But to my mind the overshadowing question here is, not whether the commissioner of Indian affairs in law and in fact possessed the authority to make the alleged agreement with the defendant, but did he make any agreement at all; and if so, did the defendant under the circumstances act as any reasonable and prudent man would have acted, under like circumstances. I repeat, this is the whole question involved in the exclusion of this evi-

dence from the jury, and it was error, in my judgment, to exclude it, for the obvious reason that it was the peculiar province of the jury to pass upon what I consider this most material question.

After the testimony was all in, it appears from the record that the counsel for the defendant requested the court to charge the jury as follows: "Ninth, That if the defendant took the property described in the indictment under an honest claim of right to do so, and under an honest belief that he had authority to take the same and dispose of it, then the act of taking would lack the felonious intent necessary to constitute the crime charged, and it is for the jury to say, in view of all the facts and circumstances in evidence, what the intention of the defendant was." Which charge the court refused to give, and to which refusal the defendant excepted. Now upon what theory was this charge denied. It certainly was manifest error.

The counsel for the defendant also requested the court to charge the jury as follows: " Tenth, That if the defendant took the property described in the indictment and converted the same to his own use under an agreement with the officers of the United States that he should do so, and return the like amount of property to the United States; or if he took such property with an honest belief on his part, that he had such agreement and authority, then he cannot be found guilty as charged in the indictment." This charge the court also refused to give.

It does seem to me that the refusal of the court to give this and the ninth instruction was error, in any view that they may be considered; it was saying in effect, it is a matter of no consequence whatever whether the defendant had or had not, before he converted the property, made an arrangement with the officers of the government to replace the same the ensuing spring; nor whether the said officers had or had not authority to make such an arrangement with the defendant; nor whether the defendant converted the property to his own use under an honest belief that he had,

by reason of said agreement, a valid and legal claim of right to said property; that his motives and purposes however honest and pure, or the circumstances under which he converted the property to his own use however conclusive to establish his innocence of the crime charged, are of no consequence whatever; that when the fact is once established that the defendant converted the property to his own use the law *eo instanti* pronounces him guilty, and that there is no balm in all Gilead that can save him from the penalty of the violated law. Can it be possible that this is the law? I cannot think so, but assuming that it is, then I frankly admit the ruling of the court in refusing to permit the defendant to testify as to the alleged agreement with the agent of the government in respect to the sugar in question, was not only unquestionably correct, but also the ruling in refusing to give instructions Nos. 9 and 10. But if on the other hand the position assumed by the district attorney in his argument be true, namely: that before the case was formally given to the jury, the substance if not the whole of the alleged agreement was indirectly, if not directly, before the jury; then the ruling of the court in refusing to give instructions nine and ten, was unquestionably erroneous, for the obvious reason that the court could only refuse to give them in case there was no evidence before the jury tending to show the nature of the agreement between the defendant and the commissioners of Indian affairs.

I deem it useless to pursue the record further; it discloses to my mind grave errors besides those I have considered. Let it suffice for me to say that I am of opinion that the judgment of the court below should be reversed and the defendant granted a new trial.

Judgment reversed.

Sener, C. J., dissenting.

I dissent from the reasoning and conclusions and the

final order to be entered in this case, by my honored associates.

In my opinion the court below was clothed with full jurisdiction to try and determine the case; and I am further of opinion, after a full inspection of the record, and mature consideration of the arguments of counsel and the cases cited, that there is no such error in the transcript of the record as presented here, as can or should authorize this court to disturb the verdict and judgment of the court below, by setting aside the judgment and sentence there entered. Being of this opinion, my conclusion is that the judgment of the court below ought in all respects to be affirmed, and the sentence of the prisoner as by that court ordered, should be carried into execution.